| | |
|---|---|
| JOSEPH O'QUAIN and MELISSA H. O'QUAIN | CIVIL ACTION NO.: |
| Plaintiffs | |
| VERSUS | JUDGE: |
| | MAGISTRATE: |
| SHELL OFFSHORE, INC.;<br>SHELL OIL COMPANY;<br>RADIATOR SPECIALTY, CO.;<br>UNITED STATES STEEL CORPORATION,<br>LPS LABORATORIES; MINNESOTA MINING and<br>MANUFACTURING COMPANY<br>Defendants | |

## ORIGINAL COMPLAINT

Plaintiffs, **JOSEPH O'QUAIN** and **MELISSA H. O'QUAIN**, persons of the full age of majority, residents of and domiciled in Jefferson Parish, Harvey, Louisiana, through the undersigned counsel, respectfully represents:

**I.**

Plaintiffs invoke this Honorable Court's admiralty subject matter jurisdiction set forth under 28 U.S.C. 1333 (admiralty); and 46 USC 688 (Jones Act) for negligence, unseaworthiness, maintenance and cure.

**II.**

This action is brought against the defendants, in solido, under its admiralty Jurisdiction and trial of this litigation is brought pursuant to United States Federal Rule 9(h) as a maritime bench trial. Venue is proper in this District under 28 U.S.C. § 1391 (b)-(c) because the defendants are doing business in this District and because the events giving rise to the plaintiffs' causes of actions arose in this District.

1

**III.**

The following defendants are made defendants, in solido:

**(A)** Defendant, **SHELL OFFSHORE, INC.,** is a corporation dully formed and existing under the laws of the State of Delaware and is authorized to do business in the State of Louisiana. It may be served with process through its registered agent: CT Corporation System, 5615 Corporate Blvd., Ste 400B, Baton Rouge, LA 70808.

**(B)** Defendant, **SHELL OIL COMPANY**, is a corporation dully formed and existing under the laws of the State of Delaware and is authorized to do business in the State of Louisiana. It may be served with process through its registered agent: CT Corporation System, 5615 Corporate Blvd., Ste 400B, Baton Rouge, LA 70808.

**(C)** Defendant, **RADIATOR SPECIALTY, CO**., is a foreign corporation doing business in the State of Louisiana. It may be served with process through service upon the Secretary of State with process to be directed to: Headquarters at 600 Radiator Rd., Indian Trail, NC 28079.

**(D)** Defendant, **UNITED STATES STEEL CORPORATION,** as successor in interest to US Steel Corporation and USX Corporation, a foreign corporation, which is registered to do and doing business in this state with its registered business office in Delaware and principal place of business in Pennsylvania and whose agent for service of process is National Registered Agents, Inc., 1011 N. Causeway Boulevard., Suite 3, Mandeville, Louisiana 70471.

**(E)** Defendant, **LPS LABORATORIES**, is a foreign corporation doing business in the State of Louisiana. It may be served with process through service upon the Secretary of State with process to be directed to: Headquarters at 4647 Hugh Howell Rd., Tucker, GA 30084.

**(F)** Defendant, **MINNESOTA MINING AND MANUFACTURING COMPANY**, is a corporation dully formed and existing under the laws of the State of Delaware and is authorized to do business in the State of Louisiana. It may be served with process through its registered agent: CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808.

**IV.**

This maritime proceeding is brought to recover all pecuniary/special and nonpecuniary/general damages for the personal injuries of Complainant, as this Honorable Court will determine to be lawful, necessary reasonable, fair and just which

would properly and adequately compensate complainant for all damages allowable under law.

**FACTS**
**V.**

Complainant worked as an instrument technician and as a member of the marine crew for Defendant, Shell Offshore, Inc., and Shell Oil Company on various vessels, including but not limited to the Niobe, Echo, Centurian, Shell America and Phedera seismic vessels, which were engaged in navigation and commerce from 1974 through 1993. They operated in and around the New Orleans area and beyond. He worked with and around benzene containing chemicals and solvents throughout this time while employed by above Defendants.

**UNSEAWORTHINESS AND NEGLIGENCE**
**VI.**

At all times material hereto, **SHELL OFFSHORE, INC**. and **SHELL OIL COMPANY** were Jones Act employers of Complainant at the times of the exposures in question and owed a duty to Complainant. **SHELL OFFSHORE, INC**. and **SHELL OIL COMPANY** violated its non-delegable duty to Complainant to provide him with a seaworthy vessel upon which to work.

**VII.**

In the course of his work, Joseph O'Quain was exposed to benzene and benzene-containing chemicals and solvents aboard vessels which at all material times were owned and/or operated and/or supervised by **SHELL OFFSHORE, INC**. and **SHELL OIL COMPANY**. **SHELL OFFSHORE, INC**. and **SHELL OIL COMPANY** owed a duty and breached their respective duties owed to Complainant creating conditions of

unseaworthiness and/or negligence consisting of, but not limited to, the following:

**a.** Failure to have the necessary equipment or personal to perform the required work;
**b.** Failure to have equipment aboard the vessel in working condition;
**c.** Failure to have properly trained and competent master and crew;
**d.** Permitting the vessel to be saturated and/or enveloped with benzene contaminated air, when Defendants knew or should have known of same and of injurious consequences of same;
**e.** Failure to properly secure their respective vessels and provide a safe place to work;
**f.** Defendants failure to properly inspect and/or maintain their respective vessels to ensure that benzene contaminated air would be contained and would not saturate and/or envelope the vessel causing illness and/or injury to crewmembers and maritime workers such as Complainant;
**g.** Failing to warn Complainant of the unsafe conditions and health risks associated with the exposure to benzene contaminated air aboard Defendants' respective vessels and work areas;
**h.** Failing to make proper and adequate precautions on their respective vessels so as to prevent the ongoing release of benzene into the crew spaces and work areas;
**i.** Failing to provide the master, crew, other workers, and Complainant with the adequate equipment and training to control and/or minimize exposure to benzene;
**j.** Failing to reduce, minimize, or eliminate benzene exposure levels;
**k**. Failing to comply with applicable regulations and law concerning air quality and environmental standards aboard the respective vessels, and failing to conform to standard practices in the industry with regard to same;
**l.** Failing to conduct adequate industrial hygiene monitoring of workers such as Complainant;
**m.** Failing to conduct adequate engineering controls to protect workers such as Complainant from over-exposure to toxic substances;
**n.** Failing to implement medical monitoring and testing of employees such as Complainant to determine their exposures and/or overexposures to toxic substances;
**o.** Failing to implement adequate air monitoring to protect and/or warn workers and Complainant of exposure and/or overexposures to hazardous and toxic substances;
**p.** Failing to design and/or implement adequate administrative controls to prevent overexposure
to toxic substances by Complainant, employees and/or workers;
**q.** Failing to provide proper personal protective equipment, "PPE", so as to minimize benzene exposure and prevent harm to Complainant and others on the respective vessels in the course and scope of their employment;
**r.** Failing to adequately supervise Complainant;
**s.** Failing to adequately train Complainant, crew, and other workers in appropriate methods to minimize exposure to hazardous substances including benzene;
**t.** Failing to properly ship, inspect, accept, remove, load, clean, train its employees and generally transport hazardous materials in interstate commerce, in violation of 49 C.F.R. Transportation Regulation Parts 100-185;
**u.** Any and all other acts of unseaworthiness which may be proven at trial.

**VIII.**

Mr. Joseph O'Quain's injuries were caused by the negligence of **SHELL OFFSHORE, INC**. and **SHELL OIL COMPANY** and the unseaworthiness of Defendants' respective vessels upon which complainant worked at the aforementioned times, for which Complainant seeks damages pled herein.

**MAINTENANCE AND CURE**

**IX.**

Complainant re-alleges each allegation hereinabove. At all times pertinent to this action, Complainant was and is entitled to the benefits of maintenance and cure from Defendants, Complainant's Jones Act employers, and in the event such is not timely and properly paid, now or in the future, to receive damages in the form of attorney's fees and costs from the Defendants for any wrongful failure to timely and/or pay maintenance and cure and legal interest thereon.

**STRICT PRODUCT LAIBILITY**

**X.**
1.

The following Manufacturer Defendants [**LPS LABORATORIES, MINNESOTA MINING AND MANUFACTURING COMPANY**, and **SHELL OIL COMPANY** breached duties, which they owed to Mr. O'Quain and the plaintiffs to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

**a.** to design their products to contain available and suitable products other than benzene;
**b**. to sell benzene-free products;
**c.** to select materials other than benzene for inclusion into their products;
**d.** to fully test their respective products for health risks associated with the normal and intended use of their products;

**e.** to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;
**f.** to fully warn foreseeable users and bystanders as additional medical knowledge became
available concerning the health hazards associated with their products;
**g.** to recall their products upon discovering, or at the time they should have discovered, the
health hazards associated with those products;
**h.** to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;
**i.** to refrain form negligently misrepresenting the safety and health risks of the products they sold;
**j.** to inquire about or investigate the safety and health risks of the products they sold;
**k**. to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and
**l.** other acts which may be revealed at the trial of this matter.

**2.**

While Joseph O'Quain was working for **SHELL OIL COMPANY** and **SHELL OFFSHORE, INC**. from 1974 through 1993 he was regularly exposed to a **LPS LABORATORIES** product named LPS Lubricant**; MINNESOTA MINING AND MANUFACTURING COMPANY's** product named 3M Scotchkote Electrical Coating, and **SHELL OIL COMPANY's** product named Shellsol.

**LIQUID WRENCH**

**XI**

**1.**
From 1974 through 1978 Mr. O'Quain used Liquid Wrench which was sold by **RADIATOR SPECIALTY COMPANY.**

**RADIATOR SPECIALTY COMPANY** was the manufacturer, distributor and seller of the benzene containing product, Liquid Wrench, to which Mr. O'Quain was exposed. **UNITED STATES STEEL CORPORATION (**hereinafter referred to as "U.S.

Steel") was the supplier of "Raffinate" which comprised 89% of the non-deodorized Liquid Wrench formula. U.S. Steel's Raffinate contained up to 14% or more of benzene. U.S. Steel's Raffinate, was sold solely for industrial use. U.S. Steel's Raffinate was not available in retail stores. The Federal Hazardous Substances Act and its predecessor the Federal Hazardous Substances Lading Act do not apply to non-consumer products such as Raffinate. From 1974 to 1978, the only purchaser of U.S. Steel's Raffinate was Radiator Specialty Co. As a result of his exposure to the benzene in Liquid Wrench, Mr. O'Quain suffered damage to his bone marrow and blood forming organs, resulting in kidney cancer. The defendants, Radiator Specialty Co., and U.S. Steel, knew or should have known about the causal relationship between benzene and cancer-related illnesses. The Defendants failed to warn Mr. O'Quain about the health hazards associated with benzene in Raffinate and Liquid Wrench. Radiator Specialty Company and U.S. Steel knew or should have known Raffinate and Liquid Wrench contained dangerous levels of benzene, which posed a health hazard to users of their products.

2.

As early as 1950, Radiator Specialty Company had been producing an alternative formula of Liquid Wrench (sometime referred to as the deodorized or aerosol formulations) which did not contain raffinate or benzene. In spite of the availability of this safer formulation of Liquid Wrench, Radiator Specialty Co. continued manufacture the hazardous, benzene containing, Liquid Wrench, up through 1978.

3.

U.S. Steel was negligent by failing its duties to design reasonably safe products, to use due care in conducting appropriate testing of its products, failure to warn of the

inherent dangers of its product, and to market products free of manufacturing defects, when manufacturing its products Raffinate.

4.

Radiator Specialty Co. and U.S. Steel breached duties owed to Mr. O'Quain in failing to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

**a.** to design their products to contain available and suitable components other than benzene;
**b.** to sell benzene-free products;
**c.** to fully test their respective products for health risks associated with the normal, intended and foreseeable use of their products;
**d**. to refrain from manufacturing and selling products containing unsafe levels of benzene;
**e.** to design their product to contain non-hazardous ingredients, and to not contain benzene;
**f.** to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;
**g.** to fully inspect, test, investigate and research the safety and health risks of the products they sold;
**h**. to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and
**i.** other acts which may be revealed at the trial of this matter.

5.

U.S. Steel breached duties owed to Mr. O'Quain in failing to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

**a**. to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;
**b**. to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;
**c**. instructions and warnings that should have accompanied the sale of such products;

6.

Radiator Specialty Co. and U.S. Steel knew or should have known that their

8

products posed a significant risk of harms to the users, potentially causing blood disorders and blood cancers. Radiator Specialty Co. and U.S. Steel know or should have known that users of their products (Raffinate and Liquid Wrench) were exposed to hazardous levels of benzene.

7.

As a direct and proximate result of the Defendants' negligent breach of their duties, the Plaintiffs have sustained injuries, damages and losses. The scope of the duties breached by the defendant encompasses the risk of the injuries sustained by the Plaintiffs. The duties breached were intended to protect the Plaintiffs from the type of injuries they have sustained. The Defendants' breaches of their duties constitute the direct legal cause of the injuries to the Plaintiffs.

8.

The Federal Hazardous Substance Acts, 15 USC §§1261-1278, and its predecessor, the Federal Substances Labeling Act, do not bar, preempt or prohibit non-warning claims, such as those asserted by the O'Quain's, which "require manufactures to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments." *Wagoner v. Exxon Mobil*, Docket No 09-7257, Order & Reasons, of June 3, 2011(**Attached as "Exhibit A").**

**STRICT PRODUCT LIABILITY**

**XII.**

Exposure to benzene from the Defendants' products and/or products under their care, custody and control resulted from the normal, foreseeable, and intended use of the

9

products, without substantial change in the condition in which the defendants sold or supplied these products. Defendants Radiator Specialty Co. and U.S. Steel, are strictly liable for the damages caused by its products. The Defendants' products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective defendants' control.

1.

Mr. O'Quain was an intended and foreseeable user of the alleged defective products. Radiator Specialty Co. and U.S. Steel could reasonably have anticipated the damages and losses to the Plaintiffs.

2.

Defendants Radiator Specialty Co. and U.S. Steel sold their products with conscious disregard for the safety of users of the products and other persons who might be injured thereby.

3.

Defendant, Radiator Specialty Co., is strictly liable for the damages caused by its product, Liquid Wrench, because its product was (1) Unreasonably dangerous per se; 2) Unreasonably dangerous in construction; and 3) Unreasonably dangerous in design; Halphen v.Johns-Manville Sales Corp., 484 So.2d 110 (La. 02/24/86).

4.

Defendant, U.S. Steel, is strictly liable for the damages caused by its product, Raffinate, because its product was (1) Unreasonably dangerous per se; 2) Unreasonably dangerous in construction; 3) Unreasonably dangerous in design; and (4) unreasonably dangerous by reason of failure to warn. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La. 02/24/86).

5.

Defendants' products were unreasonably dangerous in construction or composition. At the time these products left control of the manufacturer, they contained high concentrations of a cancer causing substance, benzene, which made the products more dangerous than they were designed to be.

6.

Defendants' products were unreasonably dangerous per se. The danger of use of the products, Liquid Wrench and Raffinate, whether foreseeable or not, outweighed the utility of the products.

7.

Defendants' products were unreasonably dangerous in design. These products were manufactured with constituents that contained high levels of benzene. Less toxic and cheaper design alternatives were available at the time of manufacture.

8.

Defendant's products were unreasonably dangerous in design. Radiator Specialty Co. and U.S. Steel failed to conduct adequate research and investigation into the health effects of their products.

9.

As the product designers and manufacturer, Radiator Specialty Co. and U.S. Steel had a duty to keep abreast of scientific knowledge and discoveries. Radiator Specialty Co. and U.S. Steel had a duty to test and inspect their products. Defendants' breached these duties.

10.

As a result of the defective and unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed and/or sold by all defendants, Mr. O'Quain inhaled benzene fumes and other harmful substances emitted by the normal use of the products, proximately causing kidney cancer related to benzene exposure from which he suffers and for which these defendants are strictly liable under Louisiana law.

11.

The defects in the Defendant's products include, but are not limited to, the following:

**a.** The products were unreasonably dangerous per se in that the damage in fact of using the product outweighs the utility of the product under normal, foreseeable use.
**b.** The products are unreasonably dangerous per se because the cost of injuries as a result of the benzene content of the products, outweighed the benefits of use of benzene in the product;
**c.** The products inherent characteristics (known to the defendants) gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;
**d**. lack of reasonable research and study of their products to ensure that they were fully knowledgeable of any dangerous constituents, or of any health risks from the use of the product.
**e.** lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;
**f.** failing to design their respective products so as not to emit dangerous levels of benzene;
**g.** Providing benzene containing products which, by virtue of their design and/or manufacture and/or composition, were unreasonably dangerous under reasonably anticipated use;
**h.** Failing to properly test the benzene containing product to properly evaluate the level of emissions of benzene under foreseeable conditions for extended periods of time;
**i.** Failing to warn each user of the unreasonably dangerous nature of the benzene;
**j.** defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and
**k**. other acts which may be revealed at the trial of this matter.

12.

U.S. Steel's product, Raffinate was also defected in the following additional respects:

**a.** lack of warnings or lack of sufficient warnings of the inherently dangerous properties of
the products when used in the fashion in which they were anticipated or should have been anticipated being used;
**b.** lack of warnings or lack of sufficient instructions for eliminating the health risks inherent
in the use of the products;
**c.** lack of sufficient inspections by the Defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;
**d.** containing products used by the Plaintiff, or warn adequately of the presence of excessive levels of emissions of benzene and the hazards associated with the excess levels of emissions of benzene in the manufacturer's products.

**XIII.**

Exposure to benzene from the Manufacturer Defendants' products and/or products under their care, custody and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products.

**XIV.**

The Manufacturer Defendants' products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective defendants' control.

**XV.**

Mr. O'Quain was an intended and foreseeable user of the alleged defective products and damages and Manufacturer Defendants could reasonably have anticipated the losses to the plaintiffs.

**XVI.**

The defects in the defendants' products and equipment include, but are not limited to, the following:

a. inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;
b. lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;
c. lack of warnings or lack of sufficient instructions for eliminating the health risks inherentin the use of the products;
d. lack of sufficient inspections by the defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;
e. lack of reasonable inspections by the defendants of their products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;
f. lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;
g. defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and
h. other acts which may be revealed at the trial of this matter.

**XVII.**

The Manufacturer Defendants sold their products with conscious disregard for the safety of users of the products and other persons who might be injured thereby.

**XVIII.**

The defective condition of the Manufacturer Defendants' products proximately caused or substantially contributed to Mr. O'Quain's injuries or damages as described elsewhere herein. The defendants are hence jointly and solidarily strictly liable for the damages caused by their fault.

**XIX.**

The Manufacturer Defendants knew or should have known about the causal

relationship between benzene and leukemia, cancer and disorders of the blood and blood forming tissue including kidney cancer. The defendant failed to warn Mr. O' Quain and other similarly situated workers about the health hazards associated with benzene.

## DISCOVERY RULE/CONTRA NON VALENUM

### XX.

1.

Mr. O'Quain was diagnosed with kidney cancer on November 08, 2007. The prescriptive period does not start until the plaintiffs knew or should have known that the plaintiff's kidney cancer was caused by benzene. Here, the result of the plaintiffs exposure to benzene was inherently undiscoverable. The cancer took years to develop, and even when the symptoms did manifest, neither the physicians nor the plaintiffs detected the link between his benzene exposures and his malignancies. The O'Quain family never heard or saw anything that linked benzene to his malignancy. Mr. and Mrs. O'Quain, did not learn of a possible connection between the benzene Mr. O'Quain was exposed and his illness until October 2011 which is less than one year from filing of this complaint. Mr. O'Quain's cancer was the product of exposure to these chemicals over a period of time rather than form a single point in time. Hence, the limitation period didn't start until October 2011 when the plaintiff learned about the cause of his kidney cancer and his exposure to benzene when he was contacted regarding a co-worker that had developed leukemia as a result of benzene exposure.

# DAMAGES
## XXI.

1.

As a result of all acts and omissions set forth in this Complaint and for their negligence and otherwise fault, the solidarily bound Defendants **SHELL OFFSHORE, INC., SHELL OIL COMPANY, RADIATOR SPECIALTY, CO., UNITED STATES STEEL CORPORATION, LPS LABORATORIES,** and **MINNESOTA MINING AND MANUFACTURING COMPANY**, for all damages caused by their actions and/or misconduct, including but not limited to the following:

**a.** Past, present and future physical pain, suffering and functional disability and impairment;
**b**. Past, present and future mental and emotional pain, anguish, suffering and aggravated mental and emotional deficiency;
**c.** Past, present and future medical expenses which include, but are not limited to, rehabilitation, physician, psychiatric, medical tests and exams, pharmaceutical, laboratory examinations, physical examination, diagnostic studies, medical monitoring, domestic help, nursing care and all other medical related expenses;
**d.** Past, present and future loss of wages, including but not limited to, wages, loss salary, income, fringe benefits, vacation time, sick leave, overtime, health and hospitalization insurance and disability coverage;
**e.** Diminution of earning capacity;
**f.** Loss of insurability;
**g**. Past, present and future disability, and disfigurement
**h**. Loss of enjoyment of life;
**i.** Loss of consortium;
**j**. Physical impairment; and
**k.** Any and all other economic losses Complainant has sustained or will sustain in the future.

2.

## LOSS OF CONSORTIUM

Due to the Manufacturing Defendants fault, as described above, and because of the benzene related injuries of Mr. O'Quain, the plaintiffs have suffered loss of

16

consortium, loss of services, loss of affection, and loss of nurture and are entitled to damages as are reasonable.

**WHEREFORE**, Complainant, **JOSEPH O"QUAIN** and **MELISSA H. O'QUAIN**, pray that judgment be awarded in their favor and against the solidarily bound Defendants, **SHELL OFFSHORE, INC., SHELL OIL COMPANY, RADIATOR SPECIALTY, CO., UNITED STATES STEEL CORPORATION**, **LPS LABORATORIES,** and **MINNESOTA MINING AND MANUFACTURING COMPANY** for pecuniary/special and non-pecuniary/general damages which would be sufficient, adequate, and lawful to compensate Plaintiff for all losses and damages as alleged and sought herein, together with legal interests from the date of the judicial demand or interest determined by the Court until paid, plus maintenance and cure, and all other relief as this Court may deem lawful, equitable, necessary, proper and just.

        Respectfully submitted,

        /*s/ L. Eric Williams, Jr.*
        L. Eric Williams, Jr. (#26733)
        **WILLIAMS LAW OFFICE, LLC**
        433 Metairie Road, Suite 302
        Metairie, Louisiana 70005
        Telephone: (504) 832-9898
        Facsimile: (504) 832-9811
        Email: eric@amlbenzene.net
        **ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE:**

**SHELL OFFSHORE, INC.**
Through its registered agent for service of process
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, Louisiana 70808

**SHELL OIL COMPANY**
Through its registered agent for service of process
CT Corporation System
5615 Corporate Blvd., Suite 400B
 Baton Rouge, Louisiana 70808


**RADIATOR SPECIALTY, CO.**
Through its registered agent for service of process
600Radiator Rd.,
Indian Trail, NC 28079.

**UNITED STATES STEEL CORPORATION**
Through its registered agent for service of process
National Registered Agents, Inc.,
1011 N. Causeway Boulevard., Suite 3,
Mandeville, Louisiana 70471

**LPS LABORATORIES**
Through its registered agent for service of process
Headquarters at 4647 Hugh
Howell Rd., Tucker, GA 30084.

**MINNESSOTA MINING AND MANUFATURING COMPANY**
Through its registered agent for service of process
CT Corporation System
5615 Corporate Blvd.
Ste 400B
Baton Rouge, LA 70808