UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH O'QUAIN, *ET. AL.*, | * | CIVIL ACTION |
| VERSUS | * | NO. 2:12-cv-01693 |
| SHELL OFFSHORE, INC. *ET. AL.*, | * | JUDGE: HELEN G. BERRIGAN |
| | * | MAG. JUDGE: JOSEPH WILKINSON |
| * * * | | |

### ORDER AND REASONS[1]

Before the Court is a Motion to Dismiss filed by Defendants Shell Oil Company and Shell Offshore ("Shell"). (Rec. Doc. 55). Plaintiffs Joseph O'Quain ("O'Quain") and his wife Melissa O'Quain (collectively "Plaintiffs") partially oppose the motion. (Rec. Doc. 57). Having considered the memoranda of counsel, the record, and the applicable law, the Court finds that the Motion to Dismiss should be GRANTED in part and DENIED in part for the following reasons.

### I. BACKGROUND

Plaintiffs filed this suit against Shell and other Defendants: Radiator Specialty Company, United States Steel Corporation, LPS Laboratories, and Minnesota Mining and Manufacturing Company (collectively "Manufacturing Defendants"), seeking damages for personal injuries allegedly sustained from coming into contact with the chemical benzene, which O'Quain claims he was exposed to while working as an instrument technician on Shell vessels. (Rec. Doc. 50, p. 3). Plaintiff brings suit for Jones Act negligence and unseaworthiness of various Shell vessels and claims damages for pain and suffering, medical expenses, lost wages, loss of enjoyment of life,

---

[1] Jessica Earl, a third-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

disability, and loss of consortium. *Id.* at 17. Plaintiffs also seeks maintenance and cure, compensatory damages, and attorney's fees, alleging Shell breached its duty to provide O'Quain with a seaworthy vessel on which to work. *Id.* at 3. Plaintiffs also brings claims of strict products liability against the Manufacturing Defendants, as to which the Court does not address in this Order. *Id* at 6-7.

O'Quain worked as an instrument technician of the marine crew for Shell from 1974 to 1993. *Id.* at 3. O'Quain worked on various seismic vessels which were engaged in navigation and commerce and operating in and around the New Orleans area. *Id.* Throughout his years working on Shell vessels, O'Quain alleges that he was regularly exposed to hazardous chemicals used on these vessels including: LPS Laboratories' product 'LPS Lubricant', Minnesota Mining and Manufacturing Company's product '3M Scotchkote Electrical Coating', and Shell's product 'Shellsol.' *Id.* at 7. Further, O'Quain was allegedly exposed to the chemical benzene from 1974-1978, which Plaintiffs claim is hazardous and, with repeated exposure, can potentially cause various blood disorders and cancers. *Id.* at 7-9. Defendant Radiator Specialty Company manufactured, distributed and sold the product 'Liquid Wrench' which contained benzene. *Id.* United States Steel supplied a product called "Raffinate" to the Radiator Specialty Company; Raffinate allegedly contained 14% benzene and made up 89% of the Liquid Wrench product used by O'Quain on Shell vessels. *Id.* Plaintiffs allege that the Manufacturing Defendants knew or should have known about the causal relationship between benzene and cancer-related illnesses. *Id.*

On November 8, 2007, O'Quain was diagnosed with kidney cancer. *Id.* at 16. O'Quain alleges that as a result of repeated exposure to the benzene in Liquid Wrench, he suffered damage to his bone marrow and blood forming organs, resulting in the kidney cancer. *Id.* at 7. O'Quain

alleges he was unaware of the possible connection between benzene and his cancer until October 2011, when he was contacted regarding a co-worker that had recently developed leukemia, allegedly resulting from benzene exposure as well. *Id.* at 16. Plaintiffs allege the cancer is a result of exposure to the chemicals over the long period of time working for Shell, and not an illness that formed in a single point of time while working on the vessels. *Id.* As a result of these alleged losses and damages, Plaintiffs filed suit on November 5, 2012. *Id.* at 18.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint in whole or in part where the plaintiff has failed "to state a claim upon which relief may be granted." In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d. 190, 196 (5th Cir. 1996). Although courts are required to take as true all factual allegations in the complaint, they are not bound to accept labels, conclusions, or formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right of relief above the speculative level. The pleading must contain something . . . more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the assumption that all the allegation in the complaint are true (even if doubtful in fact)." *Id.* (citations and quotations omitted). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278 (5th Cir. 1993).

To defeat a motion to dismiss, a complaint must "contain either direct allegations on every material point necessary to sustain a recovery" or "contain allegations from which an inference fairly may be drawn that the evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citations omitted). Therefore, a plaintiff must "plead specific facts not mere conclusory allegations" to avoid dismissal for failure to state a claim. *Guidry v. Bank of LaPlace*, 954 F.2d 178, 281 (5th Cir. 1992).

**B. Maintenance and Cure**

Plaintiffs claim both maintenance and cure and compensatory damages and attorney's fees based on Shell's allegedly negligent use of the chemical benzene on its vessels, rending the vessels unseaworthy. (Rec. Doc. 50). Under the Jones Act, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997) (en banc). The fundamental duty of a Jones Act employer is to provide his seaman employees with a reasonably safe place to work. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir.1989). In *Gautreaux*, the Fifth Circuit clarified that an employer is liable under the Jones Act if the negligence of its employees or agents played "any part, even the slightest" in causing the injury or death for which damages are sought. *Gautreaux*, 107 F.3d at 335. To establish a claim for unseaworthiness, "the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is used. In addition, the plaintiff must establish a causal connection between his injury and

the breach of duty that rendered the vessel unseaworthy." *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir.2002).

Upon proving a breach of duties, seaman have a right to maintenance and cure for injuries suffered by them in the course of their duties on a vessel. *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 491-92 (1943). Maintenance is a daily stipend for living expenses and cure is the payment of medical expenses. *Guevara v. Maintenance Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995). Before plaintiff can recover maintenance and cure, he bears the burden of alleging and proving the following: (a) his engagement as a seaman, (b) that his illness and injury occurred, was aggravated, or manifested itself while in the ship's service, (c) the wages to which he may be entitled, and (d) the expenditures or liability incurred by him for medicines, nursing, care, board and lodging. *Lodrigue v. Delta Towing, LLC*, 2003 WL 22999425, at *6 (E.D. La. Dec. 19, 2003). A plaintiff need not prove any proof of negligence or fault on the part of the employer to establish his entitlement to maintenance and cure. *Id.* Seamen injured in the course of their employment are entitled to maintenance and cure benefits until they reach the point of maximum medical improvement. *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987). Maximum medical improvement is the point at which no further improvement in the seaman's medical condition is reasonably expected. *Farrell v. United States*, 336 U.S. 511, 518 (1949). "Generally, the obligation to provide maintenance and cure ends when a doctor provides a qualified medical opinion that plaintiff has reached his maximum medical improvement." *Lodrigue*, 2003 WL 22999425, at *6.

Shell argues that Plaintiffs does not meet the first qualification for maintenance and cure, claiming O'Quain has not been qualified as a seaman since 1993, his last year with Shell. (Rec. Doc.

55, p. 6). Shell alleges that because O'Quain has not worked as a seaman for Shell since 1993, he is not entitled to the maintenance and cure damages normally awarded to those with seaman status. *Id.* Normally, the question of seaman status in a particular case is to be resolved by the fact finder. *Senko v. LaCrosse Dredging Corp.*, 352 U.S. 370, 374 (1957) ("the determination of whether an injured person was a 'member of a crew' is to be left to the finder of fact"); *see also Abshire v. Seacoast Products, Inc.*, 688 F.2d 832, 835 (5th Cir. 1982). The standard for testing a finding that a worker is or is not a Jones Act seaman is whether there is a reasonable evidentiary basis to support that finding. *Savoie v. Otto Candies, Inc.*, 629 F.2d 363, 365 (5th Cir. 1982). Applying that standard here, the Court finds there is sufficient allegations to draw an inference O'Quain was a Jones Act seaman when he was exposed to the benzene aboard Shell's vessels.  Further evidence on the material issue  surrounding O'Quain's seaman status are reserved for summary judgment.

Second, O'Quain must prove his illness occurred, was aggravated, or manifested itself while in Shell's service. *Lodrigue*, 2003 WL 22999425, at *6; *Foster, III v. Brian's Trans. Serv. et al.,*1993 WL 114528, *2 (E.D. La. 1993). The Supreme Court has held that "[w]hen there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure] they are resolved in favor of the seaman." *Vaughn v. Atkinson*, 369 U.S. 527, 532 (1962).  Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968). Shell responds that the issue of whether O'Quain's illness occurred while working on Shell vessels is irrelevant as maintenance and cure are only provided to seaman injured during service. (Rec. Doc. 55, p. 5).  Assuming O'Quain has seaman status, maintenance and cure can still be awarded upon a finding that some sort of connection is found between O'Quain's exposure to the benzene and his cancer. The Court finds

that whether O'Quain's illness occurred, was aggravated, or manifested itself during his time with Shell is a matter best reserved for summary judgment or trial. At this phase in the pleadings, Plaintiffs have sufficiently stated a claim for Jones Act employer breach of duty. The motion to dismiss as to claims for maintenance and cure and other compensatory damages should, therefore, be DENIED.[2]

**C. Loss of Consortium**

Plaintiffs next seek damages for loss of consortium, loss of services, loss of affection, and loss of nurture to be awarded to both O'Quain and his wife Melissa O'Quain. (Rec. Doc. 50, p. 17.) Defendant responds that even assuming O'Quain is a seaman, neither he nor his wife are entitled to loss of consortium or any other societal damages. (Rec. Doc. 55, p. 7-8). It is long established in this Circuit that neither a Jones Act seaman nor his wife has a cause of action for loss of consortium, society, service, and intimate relations. *See Murray v. Anthony J. Bertucci Constr. Co.,* 958 F.2d 127, 128-33 (5th Cir. 1992); *Miles v. Apex Corp.* 498 U.S. 19 (1990) (precluding an injured seaman's spouse from recovering loss of society damages under general maritime law). Courts in this Circuit have repeatedly held that non-pecuniary damages are not an available remedy for Jones Act seaman for either negligence or unseaworthiness claims. *Carter v. Placid Oil Co.,* 760 F. Supp. 568, 571 (E.D. La. 1991); Jones Act, 46 U.S.C.A. App. § 688. Further, Jones Act seamen and their families cannot recover non-pecuniary damages from a non-employer third party. *Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 (5th Cir. 2004). As a result of this well-established doctrine, Plaintiffs subsequently filed an opposition to Shell's motion to dismiss in which Plaintiffs conceded they have

---

[2] It is further noted that this Court has already denied Shell's original motion to dismiss for maintenance and cure claims, and it does so again here. *See* Rec. Doc. 48.

7

failed to state a claim upon which relief can be granted against Shell for loss of consortium for either O'Quain or his wife. (Rec. Doc. 57, p. 5).

Plaintiffs do, however, maintain their claims for loss of consortium for both O'Quain and his wife against the Manufacturing Defendants. *Id.* Plaintiffs' claims against the Manufacturing Defendants are based on negligence and strict product liability. *Id.* Jones Act seamen and their family members may recover non-pecuniary damages against a non-employer third party defendant on a products liability theory. *Gerdes v. G&H Towing Co.,* 967 F. Supp. 943, 945 (S.D. Tex. 1997); Jones Act, 46 U.S.C.A. App. § 688. The Manufacturing Defendants were not the employer of O'Quain but rather the suppliers of the various chemical parts that comprised Liquid Wrench which Plaintiffs alleges caused his illness. Plaintiffs' claims against these particular defendants are not Jones Acts claims, therefore Plaintiffs' remedies should not be limited to those available under the Jones Act. Therefore, the Court finds the Plaintiffs should be allowed to pursue their claims for nonpecuniary damages against the Manufacturing Defendants should they so choose, but will not address those claims in this motion. The pending motion to dismiss before the Court was filed only by Defendant Shell, a Jones Act employer. Therefore, the motion to dismiss as to claims for loss of consortium and other societal damages against Shell is GRANTED.

**D. Duplicative Claims**

Shell further alleges that Plaintiffs have numerous duplicative damages claims, which should be dismissed. (Rec. Doc. 55, p.10-12). Shell argues that Plaintiffs' claim for "past, present, and future physical pain, suffering, and functional disability and impairment" overlaps with its claim for "past, present, and future disability and disfigurement." *Id.* Plaintiffs responds that functional disability is different from future disability and disfigurement, and the two damage claims should

remain as written. (Rec. Doc. 57, p. 6). Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages. *Conway v. Icahn & Co.,* 16 F.3d 504, 511 (2d Cir. 1994). Further, no duplicating recovery of damages for the same injury may be had. *White v. United States*, 507 F.2d 1101, 1103 (5th Cir. 1975). Here, the Court finds that Plaintiffs' damages listed in the complaint under section (a): "past, present, and future physical pain, suffering, and functional disability" are duplicative of the damages listed under section (g) "past, present, and future disability". (Rec. Doc. 50, p. 17). In regards to its claims against Shell as a Jones Act employer, Plaintiffs are limited to recovery for compensation of future earning capacity, lost wages (maintenance), medical expenses (cure), and pain and suffering. *Gautreaux*, 107 F.3d, at 332. Therefore, the Court finds that the motion to dismiss as to duplicative damage claims is GRANTED.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

New Orleans, Louisiana, this 11th day of January, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**